IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **GARY SLOSS**, | Case No. 6:14-cv-00954-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN**<br>Commissioner of Social Security, | |
| Defendant. | |

Rory Linerud, LINERUD LAW FIRM, P.O. Box 1105, Salem, OR 97308. Of Attorneys for Plaintiff.

Billy J. Williams, Acting United States Attorney, and Ronald K. Silver, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; Martha A. Boden, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Gary Sloss seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Social Security Disability Insurance benefits and Supplemental Security Income benefits. For the reasons set forth below, the Commissioner's decision is reversed and remanded for further proceedings.

**STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

**BACKGROUND**

**A. Plaintiff's Application**

Plaintiff, Gary A. Sloss, was born on May 26, 1964. AR 22. He was 44 years old at the alleged disability onset date and is currently 51 years old. Plaintiff does not live anywhere permanently and had been receiving unemployment benefits of $172 per week until two months

before he filed for social security benefits. AR 128. Plaintiff's past work experience includes construction worker, maintenance worker, groundskeeper, and cable installer. AR 22.

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on April 8, 2011. He also filed a Title XVI application for supplemental security income on April 8, 2011. Plaintiff alleged disability beginning October 31, 2008. Plaintiff alleged disability due to seizures, two past head traumas, neck and back problems, high blood pressure, depression, anxiety, temporary blindness, blackouts, and time and place disorientation. On January 22, 2013, after holding a hearing, Administrative Law Judge ("ALJ") J. Alan Beall found Plaintiff not disabled. AR 24. Plaintiff was represented by counsel at the hearing, and both Plaintiff and a vocational expert ("VE") testified at the hearing. Plaintiff appealed the ALJ's decision to the Appeals Council and his appeal was denied on April 8, 2014, making the ALJ's decision the final decision of the Commissioner. AR 1-6. Plaintiff now seeks judicial review of that decision.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C.  The ALJ's Decision**

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date of October 31, 2008. AR 15. Plaintiff had no earnings posted to his earnings record after 2008. *Id*. Plaintiff, however, told a consultative psychologist in June 2011 that he worked "odd jobs" in exchange for food and fuel, and he testified at the hearing that he had worked a month before the hearing doing a three-week stint as a landscaping laborer. AR 16. At this position, Plaintiff worked 24-30 hours per week and earned $9.00/hour. *Id*. The ALJ noted that while there is no evidence in the record of these earnings, this testimony shows that Plaintiff has the ability to engage in at least some basic work activity. *Id*.

At step two, the ALJ found that Plaintiff had the following severe impairments: status post two head traumas, history of seizure disorder, history of tinnitus, mild osteoarthritis of the

left shoulder AC joint, mid left shoulder impingement, high blood pressure, cognitive disorder NOS, and depressive disorder NOS. *Id*.

At step three, the ALJ determined that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 16. Next, the ALJ formulated the Plaintiff's RFC during the relevant period. In determining Plaintiff's RFC, the ALJ evaluated and relied upon testimony and evidence from Plaintiff, Yung Hwang, M.D., Erik Snyder, M.D., clinical psychologist David Lutz, Ph.D., and state agency mental consultant Kenneth Burstin, Ph.D. AR. 18-22. After reviewing the evidence, the ALJ determined that Plaintiff had the RFC to perform a range of light work, as follows:

> He is able to lift/carry ten pounds frequently and up to twenty pounds occasionally; he able [sic] to sit for about six hours during a normal eight-hour workday (with normal breaks), and stand/walk for about six hours during a normal eight-hour workday (with normal breaks). He must be permitted to shift positions between standing/walking and sitting at will for comfort throughout the workday. He is able occasionally to engage in overhead reaching and push-pull activities with his non-dominant left upper extremity. Otherwise, he is able to perform push/pull activities without limit except as shown for lift/carry. He must avoid climbing ladders, ropes, or scaffolds. He can perform all other postural activities on a frequent basis. He must avoid concentrated exposure to workplace hazards such as unprotected heights, unguarded moving machinery, etc. Such work must not involve driving at night. He is limited to jobs that do not require fine hearing capability or involve a noisy, loud work environment that would further damage his hearing, unless he is permitted to wear hearing protection. He is able to hear normal conversation in a quiet room. He is able to perform unskilled work with a specific vocational preparation (SVP) level of two or less, with only simple job-related decision making required. Such work should be performed in a setting that involves few, if any, changes in the workplace environment. Such work should also require no more than occasional interaction with the general public; and no more than occasional interaction with co-workers and supervisors.

AR 18.

At step four, the ALJ found that Plaintiff was unable to perform past relevant work because his past work exceeds the RFC. AR 22. The ALJ, however, also found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in sufficient numbers in the national economy that the claimant can perform. *Id*. Based on these findings, the ALJ concluded that Plaintiff was not disabled.

## DISCUSSION

### A. Whether the ALJ Reasonably Relied on the Vocational Expert

Plaintiff argues that the ALJ improperly relied on the testimony of the VE, as the testimony of the VE contradicts information that is contained in the Dictionary of Occupational Titles ("DOT"). Plaintiff alleges a series of instances in which the ALJ erred in relying on the VE's testimony in determining what jobs Plaintiff can perform. Those allegations are: (1) it was error to rely on the VE's testimony because he included jobs that list frequent reaching in the description and the DOT does not distinguish between overhead reaching and other forms of reaching; (2) it was error to rely on the VE's testimony because he included a job that requires "[p]erceiving the nature of sounds by ear," even though the ALJ concluded that Plaintiff could not perform tasks requiring fine hearing capability; (3) it was error to rely on the VE's testimony because he included jobs that require exposure to moving machinery; (4) it was error to rely on the VE's testimony because he included jobs that involve interaction with co-workers; and (5) it was error to rely on the VE's testimony because he included jobs without explaining the sitting and standing requirements.

### 1. Reaching Limitation

Plaintiff argues that the ALJ erred in concluding that the VE's testimony was consistent with the DOT with regard to reaching. In the RFC and hypothetical posed to the VE, the ALJ

included the limitation to only occasional overhead reaching. The VE testified, and the ALJ accepted, that such an individual could perform jobs (electrical assembler, small product assembler, and polisher of eye glass frames) that require "frequent reaching" based on the DOT job requirements. The "DOT does not specify whether the requisite 'reaching' includes reaching above shoulder level or in all directions," however, "relevant legal authorities suggest that it does." *Martinez v. Colvin*, 2015 WL 966131, at *4 (E.D. Cal Mar. 4, 2015) (holding that it was an error to include jobs that involve frequent reaching when plaintiff was precluded from overhead reaching, and the error was not harmless because there were no other jobs identified that plaintiff could perform). Reaching is defined as "extending the hands and arms in any direction." *See* Social Security Regulation ("SSR") 85-15, *available at* 1985 WL 56857, at *7. Further, "the weight of authority in the Ninth Circuit supports the proposition that 'reaching' as used . . . in the DOT encompasses overhead or above-the-shoulder reaching." *Riad v. Colvin*, 2014 WL 2938512, at *5 (C.D. Cal June 30, 2014); *see Lang v. Comm'r Soc. Sec.,* 2014 WL 1383247, at *7–*8 (E.D. Cal. Apr. 8, 2014) (finding potential conflict between VE's opinions and DOT where VE testified that plaintiff could perform three jobs that require "frequent reaching"—a requirement that "could potentially encompass frequent overhead reaching," which plaintiff could not do).

The DOT and the VE's testimony are in conflict because the VE testified that a person with Plaintiff's limitations could perform three jobs that the DOT identifies as requiring frequent reaching. When there is an apparent conflict between VE testimony and the DOT, the ALJ "must elicit a reasonable explanation for the conflict before relying on the VE evidence to support a determination or decision about whether the claimant is disabled." SSR 00–4p at *2; *see also Massachi v. Astrue*, 486 F .3d 1149, 1154 (9th Cir.2007) ("Thus, the ALJ must first

determine whether a conflict exists. If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the Dictionary of Occupational Titles."). The ALJ did not ask the VE to clarify if these jobs would require any overhead reaching or otherwise explain how a person with Plaintiff's limitations could perform these jobs. Unlike cases where the job descriptions support a reasonable conclusion that overhead reaching is not required, *see, e.g., Fenton v. Colvin*, 2015 WL 3464072, at *2 (D. Or. June 1, 2015); *Strain v. Colvin*, 2014 WL 2472312, at *2 (C.D. Cal. June 2, 2014), here the job descriptions are ambiguous as to whether overhead reaching is required. Thus, the ALJ erred by failing to elicit a reasonable explanation for the apparent conflict. *Massachi*, 486 F.3d at 1154. The error was not harmless and this case is remanded for further proceedings.

  **2. Hearing Limitation**

  Plaintiff argues that the ALJ erred in relying on the VE's testimony that a person with Plaintiff's limitations could perform the job of electrical assembler. This job requires perceiving the nature of sounds by ear. DOT No. 729.687-010, *available at* 1991 WL 679733. Plaintiff argues that this is inconsistent with the ALJ's conclusion that Plaintiff could not perform tasks requiring fine hearing capability. Arguably, a job requiring the worker to listen for unusual sounds to detect defective parts or faulty operation would be inconsistent with this limitation given by the ALJ in his hypothetical. The DOT does not have a definition for "fine hearing capacity," but common sense suggests that listening for minor changes in sound would fall under this category (much like fine motor skills require small movements).

  The Commissioner argues that this apparent inconsistency is irrelevant or harmless because the DOT describes the electrical assembler hearing requirement as "occasional" and the noise level is "moderate." This argument is unavailing. The fine hearing capability restriction is

not based on the noise level; the ALJ covered that aspect by limiting Plaintiff from working in loud environments, unless he had proper ear protection. Further, the ALJ did not conclude that Plaintiff could occasionally use fine hearing skills—the ALJ restricted Plaintiff from this completely. As such, the ALJ erred in relying on the VE's testimony to conclude that Plaintiff could perform the job of electric assembler. The ALJ needed to elicit a reasonable explanation for this apparent conflict before accepting the VE's testimony.

### 3. Moving Machinery

Plaintiff argues that the ALJ erred in accepting the VE's testimony that included jobs that would expose Plaintiff to moving machinery because he is limited "to no concentrated hazards such as moving machinery." This argument misstates Plaintiff's limitations as found by the ALJ. The limitation as stated by the ALJ is that Plaintiff "must avoid concentrated exposure to workplace hazards such as . . . unguarded moving machinery." AR 18. The ALJ did not find that Plaintiff was restricted from working with all moving machinery, but only unguarded moving machinery. Plaintiff does not argue that the jobs suggested by the VE would expose Plaintiff to "unguarded" machinery. Further, Plaintiff is restricted to "no concentrated exposure" to such machinery, not to "no concentrated hazards," as Plaintiff argues. The ALJ did not err in relying on the VE's testimony with regard to the moving machinery requirement.

### 4. Interaction with co-workers

Plaintiff argues that the ALJ erred by relying on the VE's testimony to conclude that Plaintiff could perform the job of small product assembler because this job requires interaction when passing units onto co-workers. The DOT states that a small products assembler "[f]requently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker." DOT No. 706.684-022, *available at* 1991 WL 679050. In *Veteto v. Colvin,* the court found that this description is ambiguous as to how often assemblers

PAGE 10 – OPINION AND ORDER

are working in groups. 2014 WL 412414, at *4 (D. Or. Feb. 3, 2014) (holding that because "it is unclear whether the job of a small products assembler would require more than 'occasional . . . coworker interaction' . . . the ALJ had a duty to further develop the record"). Here, the ALJ did not resolve the ambiguity by asking the VE how much interaction would be required. Thus, there is a conflict between the DOT description and the RFC as determined by the ALJ, and the ALJ needed to elicit a reasonable explanation.

### 5. Sitting and standing requirements

Plaintiff argues that the ALJ erred in accepting the VE's testimony that Plaintiff could perform the jobs identified because the ALJ did not specifically identify in the RFC how frequently Plaintiff will need to change positions between sitting and standing. The DOT does not contain requirements relating to how frequently a person performing the jobs must alternate between sitting and standing and, thus, there was no conflict with the DOT. Further, the ALJ asked the VE about the sitting and standing issue, and the VE testified that the jobs included were bench jobs that intrinsically allow for Plaintiff to sit and stand at will. Thus, even if there were a conflict, the VE provided a reasonable explanation. The ALJ did not err in accepting the VE's testimony that Plaintiff could perform the listed jobs with regard to Plaintiff's need to alternate between sitting and standing.

## B. Whether the RFC was Supported By Substantial Evidence

Plaintiff argues that the ALJ improperly based his RFC finding on a physical RFC form submitted by a single decision maker, Richard Allen. Defendant concedes that an ALJ should not treat as opinion evidence forms completed by a single decision maker. Defendant responds, however, that the ALJ relied on more than Mr. Allen's form in determining Plaintiff's RFC. The Court agrees.

The ALJ cited to Plaintiff's testimony and opinion evidence from other medical providers in formulating Plaintiff's RFC. AR 21. The ALJ also relied on the record and Plaintiff's activities of daily living, including riding his motorcycle and performing landscaping work, as demonstrating that Plaintiff has the physical capacity to lift up to 20 pounds on an occasional basis. *Id.* This is distinguishable from *Morgan v. Colvin*, in which the ALJ specifically stated that she gave substantial weight to the opinion of a single decision maker. 531 F. App'x 793, 795 (9th Cir. 2013) (holding that the ALJ erred in according substantial weight to the opinion of a single decision maker).

Plaintiff also argues that the ALJ erred by not specifying the frequency of Plaintiff's need to alternate between sitting and standing, in violation of SSR 96-9p. The ALJ included in the RFC that Plaintiff must be able to alternate between sitting and standing "at will." Courts have repeatedly held that an RFC that limits a plaintiff to a "sit/stand option," sitting and standing "as needed," or to alternating between sitting and standing "at will" is sufficiently specific to comply with SSR 96-9p. *See Buckner–Larkin v. Astrue*, 450 Fed. App'x 626, 627 (9th Cir. 2011); *Haller v. Colvin*, 2015 WL 1433597, at *5 (D. Or. Mar. 26, 2015); *Brown v. Colvin*, 2014 WL 6388540, at *7 (D. Or. Nov. 13, 2014); *Rowland v. Colvin*, 2013 WL 5530611, at *10 (D. Or. Sep. 25, 2013); *Swofford v. Comm'r Soc. Sec. Admin.*, 2013 WL 3333063, at *6 (D. Or. July 1, 2013). Thus, the ALJ did not err in limiting Plaintiff to alternating between sitting and standing "at will."

Plaintiff makes the argument that the ALJ "formulated other critical parts of the RFC without explanation." Specifically, Plaintiff argues that the there was no evidence to support the claim that Plaintiff could perform light work, occasionally reach with his left arm, or perform in any other capacity, as opposed to being restricted further. This argument is without merit. The

ALJ relied on Plaintiff's testimony and the medical record in reaching these conclusions. By addressing Plaintiff's limitation on sounds, Plaintiff's inability to interact with coworkers, and Plaintiff's limitation as to how his pain affected the length of time he could sit, the ALJ sufficiently addressed the limitations assessed by both the doctors and by Plaintiff's own testimony. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (holding that the ALJ's determination of plaintiff's RFC will be affirmed if "the ALJ applied the proper legal standard and his decision is supported by substantial evidence" and that "preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary").

Plaintiff's argument that the ALJ did not specify what medical evidence he relied on and that he failed to explain the basis for nearly every aspect of the RFC misunderstands the ALJ's opinion. For example, the ALJ stated that "viewed in the light most favorable to the claimant, such a condition [tinnitus] reasonably justifies a restriction to work that avoids loud conditions and avoids the requirement for fine hearing ability." AR 21. The ALJ also describes that Dr. Lutz's observations of Plaintiff "reasonably justify a restriction to unskilled work with limited social interaction." AR 22. There is sufficient evidence in the record supporting the ALJ's RFC determination, and the ALJ adequately explained the basis of the RFC. Plaintiff points to nothing in the record that suggests that Plaintiff's limitations are greater than the ALJ stated. As such, the ALJ did not err in his determination of Plaintiff's RFC.

Plaintiff further argues that the ALJ did not fulfill his duty to develop the record because he did not request a brain scan for Plaintiff, as was recommended in 2011 by some medical providers.. The record shows, however, that Plaintiff had a brain scan in December 2009 and the results were normal. Plaintiff asserts he suffered brain injuries before December 2009 and offers

no evidence or argument that he suffered a brain trauma after December 2009 that would render the results of that brain scan no longer applicable. Plaintiff fails to show that the absence of a new CT scan renders the record inadequate. The ALJ did not err in failing to order a CT scan.

## C. Remanded For Further Administrative Proceedings

This case is remanded for further administrative proceedings to address the apparent conflicts between the VE's testimony and the DOT, as discussed above. Because ambiguities remain in the record, this case is not appropriate for a remand for a payment of benefits. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014).

## CONCLUSION

The Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

**IT IS SO ORDERED**.

DATED this 3rd day of August, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge